UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: APPLICATION OF THE UNITED STATES FOR A WARRANT TO SEARCH THE PREMISES LOCATED AT 76 GEORGIA ROAD, OAKDALE, CONNECTICUT | NO. 3:23MJ__968__(RMS)<br><br>**FILED UNDER SEAL**<br><br>November 7, 2023 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR SEARCH WARRANT

I, Lewis M.I. Jackson, being duly sworn, depose and say:

**A. Agent Experience**

1.     I have been Special Agent with the United States Secret Service ("USSS") for past two years.  I am currently assigned to the Cyber Intelligence Unit and I also assist the Miami-Dade Police Internet Crimes Against Children Unit.  As part of my duties, I conduct criminal investigations into violations of statutes contained in Title 18 of the United States Code, including crimes related to child pornography and the sexual exploitation of children.  Before joining the USSS, I served as a Uniformed Police Officer in Greenville, South Carolina for approximately two years.  I am a Commissioned Officer in the United States Army-Reserves, currently hold the rank of Captain, and have been a certified Military Police Officer since 2016.  In total, I have been investigating criminal activity both on the state and federal level for approximately seven years.  I am authorized to execute warrants issued under the laws of the United States.  *See* 18 U.S.C. § 3056(c)(1)(A) & (f).

2.     I am current investigating Roy RODRIGUEZ ("RODRIGUEZ") for possession of child pornography, in violation of 18 U.S.C. Section 2252(a)(4) ("TARGET OFFENSE").

3.      I make this Affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41, to search the person of RODRIGUEZ, as more fully described in Attachment A1, and his current residence, located at 76 Georgia Road, Oakdale, Connecticut 06370 (the "TARGET PREMISES"), as further described in Attachment A2, to seize items constituting fruits, instrumentalities, contraband, or evidence of violations of the TARGET OFFENSE, as more fully described in Attachment B.  These items include specific Electronic Devices[1]: (1) a Samsung SM-G998U (Galaxy S21 Ultra 5G); (2) a Samsung SM-N950F (Galaxy Note 8); (3) a PlayStation 5; and (4) an Android tablet of unknown model.

4.      I am also requesting authority to obtain from RODRIGUEZ the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics), in order to unlock any Electronic Devices found in the possession of RODRIGUEZ and/or belonging to RODRIGUEZ within the TARGET PREMISES subject to search and seizure pursuant to this warrant.

5.      As set forth herein, RODRIGUEZ resides at the TARGET PREMISES.

6.      The facts set forth in this Affidavit are based on my personal knowledge, review of records, documents, and other evidence obtained during this investigation, as well as information conveyed to me by other law enforcement officials and private persons.  This Affidavit is submitted for the sole purpose of establishing probable cause and does not include every fact known to me about this matter.

---

[1] "Electronic Devices" are defined as any electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, including electronic mobile devices (such as cellular telephones, smartphones, tablets, electronic notebooks).

## B. Statutory Authority

7.     As noted above, this investigation concerns alleged violations of 18 U.S.C. Section 2252(a)(4), which criminalizes knowingly possessing, or knowingly accessing with intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if (i)the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct.  *See* 18 U.S.C. § 2252(a)(4).

## C. Definitions

8.     Based on my training and experience, I use the following technical terms to convey the following meanings in this Affidavit and its attachments:

   a.  "Child erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

   b.  "Child pornography" includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been

created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in "sexually explicit conduct," as that term is defined in 18 U.S.C. § 2256(2).

c. "Visual depictions" include undeveloped film and videotape, data stored on computer disks or by electronic means, which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. *See* 18 U.S.C. § 2256(5).

d. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2)(A).

e. "Computer" is defined pursuant to 18 U.S.C. § 1030(e)(1) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device. The term "computer" includes electronic mobile devices, such as, cellular telephones, smartphones, tablets, electronic notebooks, and data storage devices.

f. "Internet Protocol address" (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of numbers, each in the range 0-255, separated by periods. Every computer

attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

h. "Data Storage Devices," as used herein, are magnetic, optical, and electronic storage media (such as fixed disks, internal and external hard drives, CDs and DVDs, flash memory cards, thumb drives, SIM cards, and other internal and peripheral magnetic, optical, and electrical storage devices) capable of storing information.

### D. Background on Kik

9.     Kik is a free instant messaging mobile application that is available on Apple iOS, Android, and Windows Phone operating systems. Kik allows users to exchange text messages, photos, and videos with other users. Messages and files exchanged between Kik users are transmitted over the internet and pass through Kik's computer servers, which, according to Kik, were previously located in both Canada and the United States. In order to use Kik, the user is prompted to create an account by providing a first name, a last name, a username and an email address. The first name and last name are submitted by the user and

are not verified by Kik, and therefore may or may not be accurate.  Once the user has created

a Kik account, the user is able to send messages, images, and videos to other Kik users.  Kik

also sends an email message to the provided email address and the user is able to click on a

link to verify the email address, although email address verification is not required by Kik for

the account to continue to operate.

10.     Based on my training and experience KiK is often used to disseminate and

download CSAM related content in private groups.

**E.  Background of NCMEC**

11.     The National Center for Missing and Exploited Children's ("NCMEC")

CyberTipline is the nation's centralized reporting system for the online exploitation of children.

The public and electronic and internet service providers can make reports of suspected online

enticement of children for sexual acts, extra-familial child sexual molestation, child pornography,

child sex tourism, child sex trafficking, unsolicited obscene materials sent to a child, misleading

domain names, and misleading words or digital images on the internet.

12.     In addition, pursuant to 18 U.S.C. § 2258A, electronic communication service

providers and remote computing service providers have a duty to make CyberTipline reports to

NCMEC when they learn of facts or circumstances for apparent violations of the federal child

pornography laws.

13.     The statute also requires, among other things, the provider to preserve any visual

depictions, data, or other digital files that may provide context or additional information about the

reported material or person for 90 days after the submission of the CyberTipline Report.  However,

based on my training and experience, I am aware that some providers retain such information for

longer periods of time, sometimes for years after submitting the report.

14.     Based on my training and experience, I am aware that after NCMEC receives a CyberTipline Report, it will forward the report to a federal or state law enforcement agency in the location where the suspected offender is believed to be residing based on information contained in the report.

### F.  Facts in Support of Probable Cause

15.     As described herein, there is probable cause to believe that, while in the Southern District of Florida and now in the District of Connecticut, RODRIGUEZ possessed child pornography on a cloud-based Google Drive[2] account registered to himself.

16.     On January 24, 2023, NCMEC received three "Cyber Tips" from Google LLC. Google LLC reported that, on or about January 24, 2023, a user had uploaded over 200 files containing suspected child pornography to a Google Drive account.  The Google Drive account in question was registered to user "Roy RODRIGUEZ" and had a recovery phone number and a 2-step verification phone number ending in -9853.  The e-mail account associated with the Google Drive account was rrod62@gmail.com.

17.     The phone number associated with the Google Drive account—ending in - 9853—was provided by T-Mobile.  T-Mobile records revealed the subscriber name for the account associated with that phone number was "Roy RODRIGUEZ."

18.     The Google Drive account records revealed that the account was accessed from an IP address associated with a residential address in Hialeah, Florida, in the Southern District of Florida.  Law enforcement interviewed residents at the Hialeah address, a single

---

[2] Google Drive is a file storage and synchronization service developed by Google.  Launched on April 24, 2012, Google Drive allows users to store files in the cloud, synchronize files across devices, and share files.

family home.   The residents confirmed that RODRIGUEZ lived at the address from October 2021 until August 2023, and, while there, had unrestricted access to the Internet.

19.    On or about May 12, 2023, law enforcement executed a search warrant on the Google Drive account and reviewed its contents.   Law enforcement found approximately thirty videos of child pornography, including (but not limited to):

a. Google-CT-RPT-7c4a23c25b551e6e94a5c3a3cf93642d-7ed0571e-13ef-4b50-881e-cfb6dc5657a4: a video containing a nude prepubescent female who is engaged in performing fellatio on one adult male's penis, while simultaneously being penetrated by another adult male from the rear.   The victim appears to be between six to eight years old.

b. Google-CT-RPT-aedb6767982598a4fab91856bcbe2510- IMG_3723~2:    A video of a nude prepubescent female in a supine position engaged with an adult male, who has his penis in her vagina.   The victim appears to be between eight to ten years old.

c. A video of nude prepubescent female who is on the floor, looking up at an adult male penis which is masturbating.   During the video the adult male ejaculates on the victim's body.

20.    The Google Drive account also included documents specific to RODRIGUEZ. The Google Drive account contained pictures of RODRIGUEZ's DD-214 (military discharge paperwork), Federal Aviation Authority certifications in RODRIGUEZ's name, and screenshots of tax payments listing an address of 76 Georgia Rd., Oakdale, Connecticut—the TARGET PREMISES—where Rodriguez currently resides and where his car is currently registered.

### G. Facts in Support Probable Cause that RODRIGUEZ and his Electronic Devices will be found in the TARGET PREMISES

21.      Connecticut Department of Motor Vehicle records reveal that RODRIGUEZ owns a 2002 White Toyota 4Runner, with a VIN number #JT3HN87R129063313, and a Connecticut license plate bearing: BD02290.  The vehicle is registered to the TARGET PREMISES. Further, RODRIGUEZ's active Connecticut driver's license lists the TARGET PREMISES as his home address.

22.      USSS has been surveilling the TARGET PREMISES since on or about October 25, 2023.  USSS agents and local police confirmed that RODRIGUEZ's White Toyota 4Runner was located outside the TARGET PREMISES.  Following in-depth surveillance by USSS agents, RODRIGUEZ was seen inside of the TARGET PREMISES on October 25, 2023.  Since then, RODRIGUEZ has not been seen leaving the TARGET PREMISES or being outside of the TARGET PREMISES.  RODRIGUEZ's mother has been seen exiting the TARGET PREMISES on a daily basis, but no other movement has been observed by any other occupants of the TARGET PREMISES.  Between October 25 and October 31, 2023, law enforcement have performed daylight surveillance and performed "roll bys" at random times overnight.  RODRIGUEZ has not been seen and his vehicle has not moved or been repositioned.

23.      Since October 31, 2023, law enforcement has performed frequent surveillance of the TARGET PREMISES.  RODRIGUEZ has not been seen leaving the TARGET PREMISES and his vehicle has remained at the TARGET PREMISES while under surveillance.

24.      On October 31, 2023, a controlled call was conducted by an occupant of the

Hialeah residence to RODRIGUEZ on his known cell phone number (ending in -9853). RODRIGUEZ confirmed that he was at the TARGET PREMISES and was able to receive mail there.  RODRIGUEZ also confirmed that some of his personal belongings remained in the Hialeah residence, and that he would be return at some point in the future to continue his residence there.

25.      RODRIGUEZ's Google Drive account contained a screenshot of a Kik account creation screen.  In addition , RODRIGUEZ's Kik account shows that he was logging into the account from Connecticut in September and October, 2023, including multiple times a day on both WiFi and mobile networks.  Review of meta-data on certain photos containing child erotica located on RODRIGUEZ's Google Drive account showed that they were downloaded from KiK.

26.      KiK records revealed that an Electronic Device was used to register and log into RODRIGUEZ's Kik account on April 27th, 2022.  This device is matched by meta-data located on saved photos on RODRIGUEZ's Google Drive account—which he accessed in the Southern District of Florida.

27.      Kik records also reveal that the device was used to log into Kik on October 14th from an IP address matching a cancer treatment center in New Haven, Connecticut where RODRIGUEZ's father is believed to be undergoing medical treatment.

28.      This KiK account return also showed nearly daily logins to the Kik chat network in Connecticut daily between September 17, 2023 and October 16, 2023 (when law enforcement received subpoena returns from Kik).

29.      Based on the facts herein, there is probable cause to believe that RODRIGUEZ has uploaded, accessed, and retained a collection of child pornography over the course of his

travels from Hialeah in the Southern District of Florida to Connecticut, and there is probable cause to believe that RODRIGUEZ has maintained his ability to access child pornography, using Electronic Devices and other means, in his current residence, at the TARGET PREMISES.

### H.  Facts In Support that Evidence of a Crime Will be Found on RODRIGUEZ's Electronic Devices

30.     Through my experience and training, and that of other law enforcement officers, the following traits and characteristics are generally found to exist in cases involving individuals who collect images of child pornography, including digital images:

    a.  The majority of individuals who collect child pornography are individuals with a sexually-motivated attraction to children.  They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

    b.  The majority of individuals who collect child pornography often seek out likeminded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior.  The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, websites, mobile applications, email, email groups, bulletin boards, Internet chat programs, newsgroups, instant messaging, and other similar platforms.

    c.  Individuals who collect child pornography often collect and maintain points of contact to access and receive child pornography.  In the digital context,

individuals often maintain names and online user names, addresses (including email addresses, web addresses and URLs), of persons who have advertised or otherwise made known on the Internet that they have similar sexual interests.  These contacts are maintained as a means of personal referral or exchange, or a means to trade, access or receive child pornography.  These contacts may be maintained in personal devices (computers and cellular telephones) as saved communications (e.g., message threads in an application or text messages), contacts, digital notes, bookmarks, word or text files, of in other digital formats.

d.  The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collections from discovery, theft, and damage.  I know from training and experience that such individuals have been known to maintain possession of their child pornography for years, or even decades.  Collections are almost always maintained in the privacy and security of their homes or other secure locations, including personal devices, computers, cellular telephones, and external hard drives. As described herein, as computing power has increased and the price of memory and storage has decreased, it is quite easy for individuals to maintain gigabytes of data containing thousands of images of child pornography.

e.  Digital technology has dramatically changed the way in which individuals interested in child pornography interact with each other.  Mobile devices basically serve four (4) functions in connection with child pornography: production, communication, distribution, and storage.

f.  Child pornographers can now use smartphones with cameras to take a photograph, when the photograph is taken it is saved as a digital file that can be directly transferred to a computer by simply connecting the camera or smartphone to the computer.  In the last ten years, the resolution of pictures taken by smartphones has increased dramatically, meaning that such pictures have become sharper and crisper.  Photographs taken on a smartphone may be stored on a removable memory card in the smartphone.  These memory cards often store up to 32 gigabytes of data or more, which provides enough space to store thousands of high-resolution photographs.

g.  The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

h.  Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Google Mail, Yahoo! and Hotmail, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Even in cases where online storage is used; however, evidence of child pornography can be found on the user's mobile device.

i.  As is the case with most digital technology, communications by way of a mobile device can be saved or stored on the mobile device used for these purposes.  Storing this information can be intentional (i.e., by saving photos as a files on the device or saving the location of one's favorite websites in, for

example, "bookmarked" files).  Digital information can also be retained unintentionally such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or folders). In addition to electronic communications, mobile device user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

j.   As described above and in Attachment B, this application seeks permission to search for records that might be found on the TARGET PREMISES, in whatever form they are found, including data saved to computers.  One form in which the records are likely to be found is data stored on an Electronic Device's hard drive or other electronic storage media.  Thus, this warrant would authorize the seizure of Electronic Devices and Data Storage Devices or, potentially, the copying of electronically stored information, under Rule 41(e)(2)(B).

31.   As set forth herein, there is probable cause to believe that RODRIGUEZ accessed child pornography from specific Electronic Devices: (1) a Samsung SM-G998U (Galaxy S21 Ultra 5G); (2) a Samsung SM-N950F (Galaxy Note 8); (3) a PlayStation 5; and (4) an Android tablet of unknown model because his Google Drive account and Kik account records show him logging into his accounts from those devices on June 19, 2022 through January 23, 2023, at which point his Google account was terminated by Google LLC.

32.   *Probable cause.*  In addition, I submit that if any other Electronic Device or Data Storage Device is found on the TARGET PREMISES and there is reason to be believe that

RODRIGUEZ owned, possessed or used that Electronic Device, there is probable cause to believe those items in Attachment B will be stored on that Electronic Device or Data Storage Device, for at least the following reasons:

a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a Data Storage Device, deleted, or viewed via the Internet.

b.   Electronic files downloaded to a Data Storage Device can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the Data Storage Device until it is overwritten by new data.  Deleted files, or remnants of deleted files, may reside in free space or slack space– that is, in space on the Electronic Devices that is not currently being used by an active file – for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery file.

c.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the Data Storage Device that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

d.   Wholly apart from user-generated files, Data Storage Device—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To

15

give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

e.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." An Internet browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

33.  *Forensic Evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the TARGET OFFENSE, but also forensic evidence that establishes how the Electronic Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on Electronic Devices found in the TARGET PREMISES because:

a.  Data on the Electronic Devices may provide evidence of a file that was once on the Electronic Device but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the Electronic Devices that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the

electronic storage media that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, such as the attachment of USB flash storage devices or other electronic storage media, and the times the computer was in use. Computer file systems can record information about when the dates files were created and the sequence in which they were created, although this information can later be altered or falsified by a user.

b. Information stored on Electronic Devices may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, Internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the Electronic Device was accessed or used. For example, computers typically contain information logs which may reveal: (i). computer user account session times and durations; (ii) computer activity associated with user accounts; (iii) electronic storage media that

connected with the computer; and (iv) the IP addresses through which the computer accessed networks and the Internet.

c.   Such information allows investigators to understand the chronological context of the Electronic Devices' access and use, as they relate to events relating to the crime under investigation.   Additionally, some information stored within an Electronic Device may provide crucial evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both depict a particular location in a photograph and have geolocation information incorporated into its file data (e.g. a photograph clearly taken at the Connecticut State Capitol Building in Hartford, Connecticut, with GPS coordinates of the location in Hartford where the photograph was taken incorporated into the photograph's metadata).   Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).   The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Finally, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.   For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., Internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

d. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how Electronic Devices were used, the purpose of their use, who used them, and when.

e. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an Electronic Device necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant. Further, in finding evidence of how an Electronic Device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on an Electronic Device. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when that when an individual uses a computer to obtain or access child pornography, the individual's Electronic Devices will generally serve as instrumentalities for committing the crime, contain data that is evidence of the crime, and serve as storage media for fruits of the crime (e.g., contraband child pornography). The Electronic Devices are an instrumentality of the crime because they are used as a means of committing the criminal offense. The Electronic

Devices are also likely to be electronic storage media for evidence of crime.  From

my training and experience, I believe that an Electronic Device used to commit a

crime of this type may contain: data that is evidence of how the Electronic Device

was used; data that was sent or received; notes as to how the criminal conduct was

achieved; records of Internet discussions about the crime; and other records that

indicate the nature of the offense.

g.  Additionally, digital images and videos can easily and quickly be transferred

between Electronic Devices and Data Storage Device.  Once the images and

videos are accessed, they can be stored to the memory of the computer, to discs

or removable storage media, or to cloud-based storage solutions.  Evidence of

access to child pornography could be readily apparent in computer logs and

histories, or can be forensically recovered from a devices' cache.

34.  *Necessity of seizing or copying entire Electronic Devices or Data Storage
Devices.* Based on my knowledge, training, and the experience of other agents with whom I have

spoken, I am aware that in order to completely and accurately retrieve data maintained in computer

hardware, computer software, or storage media, to ensure the accuracy and completeness of such

data, and to prevent the loss of the data either from accidental or programmed destruction, it is

often necessary that Electronic Devices be seized and subsequently processed by a computer

specialist in a laboratory setting rather than in the location where it is seized.  This is true because

of:

a.  *The volume of evidence*. Storage media such as hard disks, flash drives, CDs, and

DVDs can store the equivalent of thousands or, in some instances, millions of

pages of information.  Additionally, a user may seek to conceal evidence by

storing it in random order or with deceptive file names.  Searching authorities may need to examine all the stored data to determine which particular files are evidence, fruits, or instrumentalities of criminal activity.  This process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this analysis on-site.

b.  *The time required for an examination.* As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.  As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

c.  *Technical requirements*. Analyzing computer hardware, computer software, or storage media for criminal evidence is a highly technical process requiring expertise and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications.  Thus, it is difficult to know, before the search, which expert possesses sufficient specialized skill to best analyze the system and its data.  Furthermore, data analysis protocols are exacting procedures, designed to protect the integrity of the evidence, and to recover even "hidden," deleted, compressed, or encrypted files.  Many commercial

computer software programs also save data in unique formats that are not conducive to standard data searches. Additionally, computer evidence is extremely vulnerable to tampering or destruction, both from external sources and destructive code imbedded in the system as a "booby trap."

      d. *Variety of forms of electronic media*. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

35. Consequently, law enforcement agents may either copy the data at the premises to be searched or seize the Electronic Devices for subsequent processing elsewhere.

36. The TARGET PREMISES may contain Electronic Devices whose use in the TARGET OFFENSE or storage of the things described in this warrant is impractical to determine at the scene. Electronic Devices and data can be disguised, mislabeled, or used without the owner's knowledge. In addition, technical, time, safety, or other constraints can prevent definitive determination of their ownership at the premises during the execution of this warrant. If the things described in Attachment B are of the type that might be found on any of the Electronic Devices, this application seeks permission to search and seize it onsite or off-site in order to determine their true use or contents, regardless of how the contents or ownership appear or are described by people at the scene of the search.

37. The law enforcement agents will endeavor to search and seize only the Electronic Devices which, upon reasonable inspection and/or investigation conducted during the execution of the search, reasonably appear to belong to or have been used by RODRIGUEZ and which contain the items in Attachment B. If, however, the law enforcement agents cannot make a determination as to use or ownership regarding any particular Electronic Device, the law

enforcement agents will seize and search that Electronic Device pursuant to the probable cause established herein.

38.     *Nature of Forensic Examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying Electronic Devices and Data Storage Devices that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.  I request that the warrant be deemed executed once the contents of the computers or Electronic Devices have been extracted through the computer-assisted medium and that further analysis of the Electronic Devices be permitted at any time thereafter.

39.     This warrant seeks authorization to conduct a review of computers and storage media seized, electronically stored information, communications, other records, and information seized, copied, or disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, USSS may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

40.     Because it is believed that at least two adults, RODRIGUEZ and his mother, share the TARGET PREMISES as a residence, I believe that the TARGET PREMISES will contain

Electronic Devices that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. This warrant does not authorize the search or seizure of Electronic Devices or storage media exclusively possessed and used by those persons. This warrant does authorize, however, law enforcement agents to search and seize any Electronic Device or storage media used by RODRIGUEZ, include (1) a Samsung SM-G998U (Galaxy S21 Ultra 5G); (2) a Samsung SM-N950F (Galaxy Note 8); (3) a PlayStation 5; and (4) an Android tablet of unknown model, even if those Electronic Devices or media are owned or possessed by another individual.

41.     *Manner of execution.* This warrant seeks only authorization to execute the search of the TARGET PREMISES during the daytime – that is, 6:00 a.m. to 10:00 p.m.

### I.   Background of Biometric Authentication

42.     The warrant I am applying for would permit law enforcement to obtain from RODRGIUEZ the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock Electronic Devices found within the TARGET PREMISES subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

> a.  I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many computers, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners and facial recognition features. Some computers offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

b. If a computer is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on computers produced by other manufacturers have different names but operate similarly to Touch ID.

c. If a computer is equipped with a facial recognition feature, a user may enable the ability to unlock the computer through his or her face. For example, Apple offers a facial recognition feature called "Face ID." During the Face ID registration process, the user holds the computer in front of his or her face. The device's camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the camera detects a face with characteristics that match those of the registered face. Facial recognition features found on computers produced by other manufacturers have different names but operate similarly to Face ID.

d. In my training and experience, users of computers often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a computer than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a computer's contents. This is particularly true when the users of a computer are engaged in criminal activities and thus have a

25

heightened concern about securing the contents of a device.

e.   As discussed in this Affidavit, based on my training and experience I believe that one or more computers will be found during the search.  The passcode or password that would unlock the computer(s) subject to search under this warrant is not known to law enforcement.  Thus, law enforcement personnel may not otherwise be able to access the data contained within the computer(s), making the use of biometric features necessary to the execution of the search authorized by this warrant.

f.   I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a computer in some circumstances even if such features are enabled.  This can occur when a computer has been restarted, inactive, or has not been unlocked for a certain period of time.  For example, Apple devices cannot be unlocked using Touch ID when (1) more than 48 hours has elapsed since the device was last unlocked or (2) when the device has not been unlocked using a fingerprint for 4 hours and the passcode or password has not been entered in the last 156 hours.  Biometric features from other brands carry similar restrictions.  Thus, in the event law enforcement personnel encounter a locked computer equipped with biometric features, the opportunity to unlock the computer through a biometric feature may exist for only a short time.

43.   Due to the foregoing, if law enforcement personnel encounter an Electronic Device  that may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of RODRIGUEZ to the fingerprint scanner of the device; (2) hold the device

26

in front of the RODRIGUEZ's face to activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

44.     The proposed warrant does not authorize law enforcement to require that an individual state or otherwise provide the password or identify specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the device(s).  Nor does the proposed warrant authorize law enforcement to use the fact that the warrant allows law enforcement to obtain the display of any biometric characteristics to compel an individual to state or otherwise provide that information.  However, the voluntary disclosure of such information would be permitted under such proposed warrant.  To avoid confusion at that point, if agents in executing the warrant ask any individual for the password to any device(s), or to identify which biometric characteristics (including the unique finger(s) or other physical features) unlocks any device(s), the agents will not state or otherwise imply that the warrant requires any person to provide such information, and will make clear that providing any such information is voluntary and that the person is free to refuse the request.

## J.  Request for Sealing of Application and Affidavit

45.     This investigation is ongoing, and disclosure of the search warrant, the application, or this affidavit and the attachments thereto will jeopardize its progress.  For example, if the subjects of this investigation were notified that this investigation exists, they might destroy evidence, warn co-conspirators, change patterns of behavior, flee, or otherwise seriously jeopardize the investigation.  Accordingly, I respectfully request the Court issue an order that the search warrant, the application, this affidavit in support of the application, and all attachments thereto, along with the order itself, be filed under seal until further order of this Court.

## K.  Conclusion

46.      Based on the facts set forth in this Affidavit, I submit that there is probable cause to believe that Roy RODRIGUEZ has violated Title 18, United States Code, Section 2252(a)(4) (possession of child pornography) and that his person and the TARGET PREMISES contains instrumentalities, contraband, and evidence, more fully described in Attachment B, of the TARGET OFFENSE.  I, therefore, submit that this Affidavit supports probable cause for a warrant to search RODRIGUEZ, described in Attachment A1, and the TARGET PREMISES, described in Attachment A2, and to seize the items described in Attachment B.

LEWIS M JACKSON

Digitally signed by LEWIS
M JACKSON
Date: 2023.11.07
07:56:16 -05'00'

_____

Special Agent Lewis Jackson
United States Secret Service

Attested by the applicant by telephone in accordance with the requirements of Fed. R. Crim. P. 4.1 by _telephone_ this 7th day of November, 2023.

Robert M.
Spector

Digitally signed by Robert
M. Spector
Date: 2023.11.07
08:52:44 -05'00'

_____

HONORABLE ROBERT M. SPECTOR
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1

*Person to be Searched*

The person to be searched is Roy RODRIGUEZ, a white male pictured below, and any bag or container in his possession, and any Electronic Devices[1] contained therein including the following specific devices: (1) a Samsung SM-G998U (Galaxy S21 Ultra 5G); (2) a Samsung SM-N950F (Galaxy Note 8); (3) a PlayStation 5; and (4) an Android tablet of unknown model.

Roy RODRIGUEZ is pictured below:



---

[1] "Electronic Devices" are defined as any electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, including electronic mobile devices (such as cellular telephones, smartphones, tablets, electronic notebooks). "Data storage devices," as used herein, are magnetic, optical, and electronic storage media (such as fixed disks, internal and external hard drives, CDs and DVDs, flash memory cards, thumb drives, SIM cards, and other internal and peripheral magnetic, optical, and electrical storage devices) capable of storing information.

**<u>ATTACHMENT A-2</u>**

*Premises to be Searched*

**76 Georgia Rd, Oakdale CT 06370** is a single-family home (the "TARGET PREMISES"). The TARGET PREMISES is located on the northern side of Georgia Road. The TARGET PREMISES has a distinct red in color porch on the northern side of the building and a white glass door on the Southern side (Main Entrance).  Photographs of the TARGET PREMISES are below:







**ATTACHMENT B**

*Particular Things to Be Seized*

The person and property described in Attachments A1 and A2 are to be searched for the following evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2) (possession of child pornography):

1.      All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 and of "child erotica" (that is, materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions);

2.      All notes, documents, records, correspondence, and materials, in any format and media, pertaining to the possession of child pornography;

3.      All names, addresses, contact information or lists of names, addresses, or contact information, in any format and medium, of those who may have been contacted by computer or other means for the purpose of distributing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

4.      All information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of devices, or that aid in the identification of persons involved in the possession of child pornography or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

5.      Notes, documents, records, or correspondence, in any format and medium (including, envelopes, letters, papers, e mail messages, chat logs and electronic messages, and handwritten notes) relating to the possession of child pornography as defined in 18 U.S.C. §

2256(8), and to the possession of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

6.      In any format and medium, all originals, computer or electronic mobile device files, electronic storage media files, copies, and negatives of child pornography, as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), or child erotica;

7.      Diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by use of the computer or electronic mobile device or by other means for the purpose of possessing or receiving child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

8.      Notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, computer files and software, digital data files, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, by the United States Mail or by computer or electronic mobile device, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), or any child erotica as defined above;

9.      Notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, computer files and software, digital data files, and handwritten notes) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography, or about engaging in sexual activity with minors;

10.     Notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, computer files and software, digital data files, and handwritten notes) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members;

11.     Notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, computer files and software, digital data files, and handwritten notes) concerning the ownership or use of any Electronic Devices (as defined in Attachment A1) found;

12.     Records, documents, invoices and materials, in any format or medium (including, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern any accounts with an Internet Service Provider;

13.     Records, documents, invoices and materials, in any format or medium (including, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer or electronic mobile device storage, including, software used to access such online storage or remote computer or electronic mobile device storage, user logs or archived data that show connection to such online storage or remote computer or electronic mobile device storage, and user logins and passwords for such online storage or remote computer or electronic mobile device storage;

14.     Cameras, film, video cameras, videos, or other photographic equipment used to depict child pornography or the sexual exploitation of children;

15.     Visual depictions of minors, in any explicit sexual conduct, or other materials related to an interest in children, which could fuel deviant sexual fantasies involving minors;

16.     Address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct,  as defined in 18 U.S.C. § 2256(2);

17.     Documents, records, or correspondence, in any format or medium (including, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described in Attachment A, including, rental or lease agreements, title or mortgage documents, rental or lease payments, vehicle registration or insurance, utility and telephone bills, mail envelopes, or addressed correspondence;

18.     Diaries, notebooks, notes, and any other records concerning personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2);

19.     Any and all computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

20.     The following Electronic Devices (as defined in Attachment A1):

   a.   The following Electronic Devices with which Rodriguez accessed the Google Drive account:   (1) a Samsung SM-G998U (Galaxy S21 Ultra 5G); (2) a

Samsung SM-N950F (Galaxy Note 8); (3) a PlayStation 5; and (4) an Android tablet of unknown model;

b.      Any other Electronic Device that law enforcement can reasonably determine are owned, possessed, or used by RODRIGUEZ.

21.     For each Electronic Device the seizure of which is authorized by this warrant:

a.      The items described in paragraphs 1-19, above;

b.      Records of Internet activity, including, but not limited to, firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, usernames and passwords as evidence of attribution, and records of user-typed web addresses that are relevant to violations of Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2) (possession of child pornography), or to show possession, use, or ownership of the item being searched;

c.      All applications used to view, access, and/or distribute child pornography;

d.      Evidence indicating how and when the device was accessed or used, including the geographic location of the device when it was accessed or used, to determine the chronological context of computer access, use, and events relating to the crime under investigation and to the computer user;

e.      Evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted;

f.      All records concerning Kik, including evidence of installation or use of Kik;

g.      Passwords, encryption keys, and other access devices that may be necessary to access the device;

h.      Records of or information about Internet Protocol addresses used by the device;

i.      Records of or information about the device's internet activity, including firewall logs, caches, browser history and cookies, bookmarked or favorite web pages, search terms the user entered into an Internet search engine, and records of user-typed web addresses; and

j.      Contextual information necessary to understand the evidence described in this attachment.

22.    During the course of the search, photographs of the property described in Attachment A and any items found therein or thereon may also be taken to record the condition thereof and/or the location of items.

23.    This warrant authorizes a review of Electronic Devices and Data Storage Devices seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of these Electronic Devices and Data Storage Devices may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, law enforcement may deliver a complete copy of the seized or copied Electronic Devices or Data Storage Devices to the custody and control of attorneys for the government and their support staff for their independent review.

24.    Law enforcement may conduct an off-site review of all seized Electronic Devices and Data Storage Devices at a later date in order to search, image, and otherwise copy the contents of all Electronic Devices and Data Storage Devices consistent with this warrant.

25.    During the execution of the search of Roy RODRIGUEZ as described in Attachment A1, and of the TARGET PREMISES, as described in Attachment A2, law

6

enforcement personnel are authorized to obtain from Roy RODRIGUEZ the display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any Electronic Devices, as that term is defined in Attachment A1, including to (1) press or swipe the fingers (including thumbs) to the fingerprint scanner of the computers and (2) to hold the computers in front of such individual's face to activate the facial recognition feature or iris recognition feature, for the purpose of attempting to unlock the computers in order to search the contents as authorized by this warrant.